IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| YOU JIN CHOI, on behalf of herself and a class of similarly situated persons<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA,<br>NATIONAL ASSOCIATION<br><br>Defendant. | Case No.: 1:23-CV-21 |

## AMENDED CLASS ACTION COMPLAINT

Plaintiff You Jin Choi ("Choi"), individually and on behalf of a class of all others similarly situated, brings this action, by and through her undersigned counsel, against Defendant Bank of America, National Association ("Bank of America" or "BofA") and its subsidiaries and affiliates to redress Defendant BofA's practice of sequestering or otherwise causing undue delays in making available and accessible funds deposited through checks in retail consumer accounts. The pleadings alleged in this Complaint are based upon personal experience as to the named Plaintiff and based upon information and belief after research by the undersigned counsel as to the Class.

### PARTIES

1. Plaintiff You Jin Choi is a natural person and a resident of Cook County, Illinois.

2. Defendant Bank of America, National Association is a national banking association with its principal place of business at 100 North Tryon Street, Charlotte, North Carolina. The

1

Defendant maintains numerous offices nationwide, including in the State of Illinois at the Bank of America Tower located at 110 North Wacker Drive, Chicago, Illinois.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 as there is total diversity between the Plaintiff, who is a resident of Illinois, and the Defendant, who is a resident of North Carolina under 28 U.S.C. § 1348, and the amount in controversy exceeds $75,000.

4. This Court's subject matter jurisdiction over this class action is also proper under the Class Action Fairness Act, 28 U.S.C. § 1332(d), as the amount in controversy exceeds $5,000,000.

5. This Court has supplemental subject matter jurisdiction over Plaintiff's Illinois law claims pursuant to 28 U.S.C. § 1367 as they arise from the same set of operative facts and resulted from the same conduct on the part of the Defendants.

6. This Court has personal jurisdiction over Defendants pursuant the Illinois "long arm" statute because Defendants: (a) transacted business in Illinois; (b) committed a tortious act in this state; (c) entered into a contract in this state; and (d) committed the misconduct alleged herein in Illinois. *See* 735 ILCS 5/2-209.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the facts and events giving rise to Plaintiff Choi's claims occurred in this judicial district.

## GENERAL FACTUAL ALLEGATIONS

8. Bank of America, National Association advertises to consumers that funds deposited via check before 9:00 P.M. EST "will generally be available" the next business day.



9. BofA further promises the same on Page 33 of its Service Agreement, updated on August 19, 2022:

10. BofA also explains that under certain circumstances, an account holder *may* experience longer delays before funds deposited through check become accessible and available for use:

**Longer Delays May Apply**

In some cases, we will not make all of the funds that you deposit by check available to you by the first business day after the day of your deposit. Depending on the type of check that you deposit, funds may not be available until the second business day after the day of your deposit. The first $225 of your deposits, however, may be available no later than the first business day after the day of your deposit.

If we are not going to make all of the funds from your deposit available by the first business day after the day of your deposit, we generally notify you at the time you make your deposit. We also tell you when the funds will be available. If your deposit is not made directly to one of our employees, or if we decide to take this action after your deposit is made, we mail or otherwise provide you the notice by the next business day. If you need the funds from a deposit right away, you should ask us when the funds will be available.

In addition, we may delay the availability of funds you deposit by check for a longer period under the following circumstances:

- We believe a check you deposit will not be paid.
- You deposit checks totaling more than $5,525 on any one day.
- You redeposit a check that has been returned unpaid.
- You have overdrawn your account repeatedly in the last six months.
- There is an emergency, such as failure of communications or computer equipment.

We will notify you if we delay your ability to withdraw funds for any of these reasons, and we will tell you when the funds will be available. They will generally be available no later than the seventh business day after the day of your deposit.

11. The use of the word *may* in this section, contrasted with BofA's use of the word *generally* in previous sections would indicate to a reasonable consumer/account holder that these delays are the exception rather than the rule. Thus, a reasonable consumer or account holder would expect to have access to their funds within the next business day barring certain exceptional circumstances.

12. BofA declares that this agreement and all its clauses are a "binding contract" between it and all account holders that make use of its services. This makes it both an actionable representation to consumers and a binding agreement it promises to its account holders.

## The Agreement for Your Account

### Binding Contract

This *Deposit Agreement and Disclosures*, the applicable *Schedule of Fees*, the signature card and other account opening documents for your account are part of the binding contract between you and us (this "Agreement") for your deposit account and your deposit relationship with us. They contain the terms of our agreement with you. Please read all of these documents carefully.

This *Deposit Agreement and Disclosures* also summarizes certain laws and regulations that apply to common transactions, provides some disclosures for deposit accounts required by federal law, and establishes terms that cover some transactions or situations that the law either does not cover or allows us to change by this contract. The *Schedule of Fees* lists our accounts and account fees.

When you complete our account opening documents (as an example, you sign our signature card), request an account, or keep your account open, you acknowledge that you have reviewed and understand the terms of this Agreement and you agree to be governed by these terms. You understand that these terms, as we may change or supplement them periodically, are a binding contract between you and us for your deposit account and your deposit relationship.

We give this Agreement to you when we open your account. You may obtain additional copies of this Agreement at a financial center or by calling the number on your statement. Our deposit relationship with you is that of debtor and creditor. This Agreement and the deposit relationship do not create a fiduciary, quasi-fiduciary or special relationship between us regardless of how you title your account, or whether you yourself act in a fiduciary or similar capacity with respect to funds deposited with us. We owe you only a duty of ordinary care. Our internal policies and procedures are solely for our own purposes and do not impose on us a higher standard of care than otherwise would apply by law without such policies or procedures.

13. Despite the reasonable expectations[1] of the consumers and account holders that funds from checks will generally be available the next business day, with a 2 – 7-day delay being the rare exception, the typical experience of the ordinary account holder is the very opposite of this expectation.

14. The actual typical experience for the ordinary account holder with Bank of America is that BofA routinely takes longer than 1 business day to make funds from check deposits available to its account holders.

15. Often, this delay occurs even *after* the check has already cleared the electronic process from the source bank and when there is little or no reason to delay access to funds to mitigate any supposed risk of non–payment.

---

[1] These expectations are borne out of BofA's own affirmative representations.

16. This unexpected delay in fund accessibility is a source of more than mere frustration for account holders. It can and has caused actual damages to many account holders in the form of late bill payments and other similar financial disruptions.

17. These delays also result in other damages that are no less acute. In a high inflation scenario, such as the one that the United States' economy presently finds itself in, the time value of money is a concept that is felt acutely by the average American. With the Consumer Price Index reaching a record-breaking 8.2% in the last 12 months, the prices for even every day necessities are noticeably rising on a daily basis. In short, the phrase 'money now is worth more than money later' is more relevant than ever.

18. On information and belief, BofA uses the funds it wrongfully withholds (by delaying access to) from its consumer retail deposits and makes the funds available to others, charging interest for those funds. While exact information on this practice is exclusively in the possession of BofA, and will be revealed in discovery, Plaintiff is informed and believes such interest may annually amount to hundreds of millions of dollars, based on $42,934,000,000 of total interest income that BofA earned in just fiscal year 2021. *See* "Annual Report Pursuant to Section 13 Or 15(D) of The Securities Exchange Act of 1934 for the Fiscal Year Ended December 31, 2021", Bank of America Corporation, March 25, 2022 (https://investor.bankofamerica.com/regulatory-and-other-filings/annual-reports) (last accessed November 15, 2022).

## FACTS SPECIFIC TO PLAINTIFF

19. Plaintiff Choi is an account holder, and therefore customer, of Bank of America.

20. On June 16, 2022, at 11:57 A.M., Choi deposited a check for $14,614.81 at a Bank of America ATM.

21. Bank of America immediately placed a hold for $5,300 of the funds until June 21 at 5:00 P.M. and a hold on $9,314.81 of the funds until June 24 at 9:00 A.M. For the former, BofA explained it as a "standard hold". For the latter, BofA explained that it was because the deposited amount was above the arbitrary amount of $5,525. Notably, Bank of America did not even give Choi access to the $5,424.99 below the arbitrary amount of $5,525.



22. After these holds were placed on her account, Choi contacted the parties that wrote out the check to verify its validity. These parties, in turn, checked their own bank records at Citibank and they discovered that BofA removed the full amount of the check on June 16 at 1:41 P.M., little more 2 hours after Choi deposited the check.



**Transaction Details**

Transaction Details For 76448 1

| | | |
|---|---|---|
| **Statement Date** 06/16/2022 | **Amount** -14839.81 | **Currency** USD |
| **Bank Name** CITIBANK | **Bank Reference** 76448 1 | **Value Date** 06/16/2022 |
| **Branch Name** NEW YORK CITIBANK - CORPORATE | **Branch Number** 930 | **Entry Date** 06/16/2022 |
| **Account Name** US OPER | **Account Number** | **IBAN Number** -- |
| **Customer Name** | **Customer Number** | **Customer Reference** |

Additional Details

| Field Name | Value |
|---|---|
| Product Type | Funds Transfer |
| Cheque Serial Number | 76448 |
| Duplicate | 1 |
| Transaction Amount | 14839.81 |
| Posted Time | 01:41:00 -0400 |
| Batch Track Number | 149142991731 |

**Legal Text**
We have Debited your Account.

23. Despite the money transfers for the check clearing on the same day, BofA did not release $5,300 of the funds until June 21 at 5:00 P.M and $9,314.81 of the funds until June 24 at 9:00 A.M., making Choi wait over 5 days and 8 days respectively, for her funds. During that time period, BofA had exclusive muse of Choi's funds, for many days after BofA had been paid by Citibank.

## CLASS ALLEGATIONS

24. Pursuant to the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, Plaintiff brings claims on her own behalf and as the representative of a class of all similarly-situated individuals to recover statutory penalties, prejudgment interest, attorneys' fees and costs, other damages owed, and appropriate other relief.

25. Plaintiff seeks class certification under the Illinois Code of Civil Procedure, Fed.R.Civ.P. 23(a) and 23(b)(2) and (3), for the following two class of similarly situated individuals:

> All persons in the United States who have accounts with Bank of America, who deposited checks with the bank, and had funds up to the amount of $5,524.99 withheld for longer than one business day; and

> All persons in the United States who have accounts with Bank of America who deposited checks with the bank, and had funds withheld after Bank of America had been paid on the check by the drawer bank.

26. This action is properly maintained as a class action under 735 ILCS § 5/2-801 because:

    a. The class is so numerous that joinder of all members is impracticable;

    b. There are questions of law or fact that are common to the class;

    c. The claims of the Plaintiff are typical of the claims of the class; and,

    d. The Plaintiff will fairly and adequately protect the interests of the class.

    e. BofA has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief (to stop the wrongful practice recounted herein) is appropriate respecting the class as a whole;

    f. questions of law or fact common to class members predominate over any questions affecting only individual class members; and

    g. a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

**Numerosity**

27. According to BofA's own advertisements, it has 68 million consumer and business account holders nationwide. Out of these, the total number of putative class members is estimated to be in the millions of individuals. The exact number of class members can easily be determined from BofA's records.

**Commonality**

28. There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the Class in that Plaintiff and all members of the Class have been harmed by Defendant's conduct. The common questions of law and fact include, but are not limited to the following:

    a. Whether BofA advertised that it would make funds from deposits available within one business day;

    b. Whether BofA agreed in its service agreement to make funds from deposits available within one business day;

    c. Whether BofA intended for consumers and customers to rely on these representations in making their decision to bank with, or continue to bank with, BofA;

    d. Whether Plaintiff and the class members did, in fact, rely on these representations in making their decision to bank with, or continue to bank with, BofA;

    e. Whether BofA breached or otherwise acted inconsistently with these representations;

**Typicality**

29. The claims asserted by Plaintiff are typical of the class members she seeks to represent. Plaintiff has the same interests and suffered from the same unlawful practices as the class members.

30. Upon information and belief, there are no other class members who have an interest in individually controlling the prosecution of their individual claims, especially in light of the comparatively modest value of each claim and the difficulties involved in bringing individual litigation against one's bank. However, if any such class member should become known, they can "opt out" of the Rule 23(b)(3) aspect of this action pursuant to Fed.R.Civ.P. 23(c)(2)(B)(v).

**Adequacy**

31. The Plaintiff will fairly and adequately protect the interests of all members of the class and there are no known conflicts of interest between Plaintiff and class members. Plaintiff, moreover, has retained experienced counsel that are competent in the prosecution of complex litigation with extensive experience acting as class counsel.

**Predominance and Superiority**

32. The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow many similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member may be relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims

33. Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for the Defendant and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

## COUNT I
## BREACH OF CONTRACT

34. Plaintiff realleges and repleads the allegations in Paragraphs 1 – 33 of this Complaint.

35. The Bank of America Service Agreement between Defendant, Plaintiff, and the putative class members is a valid and enforceable contract under the laws of Illinois and other U.S. Jurisdictions.

36. Under this Agreement, Bank of America promised that it would "generally" make funds from deposited checks available the next business day while withholding the funds under certain limited circumstances.

37. Bank of America breached this agreement when it made it a routine practice to withhold funds deposited through checks in contradiction of its promise to generally make the funds available the next business day, and/or withheld funds up to $5,524.99 past the next business day.

38. Bank of America further made it a routine practice to withhold funds far longer than after the funds had cleared. Thus, it took the time value of money away from its customers and used them for its own benefit.

39. Plaintiff Choi and the putative class members suffered damages by being delayed in having access to their money, which is especially acute in this high inflation economic environment.

## COUNT II

## VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT
## 815 ILCS 505, *et seq.*

40. Plaintiff realleges and repleads the allegations in Paragraphs 1 – 33 of this Complaint.

41. The Plaintiff and the putative class members are "consumers" under the Illinois Consumer Fraud Act ("ICFA") in 815 ILCS 505/1.

42. The Defendant Bank of America engaged in "trade" and "commerce" under ICFA in 815 ILCS 505/1.

43. Bank of America advertised and represented to consumers and customers (*i.e.* account holders and interested potential account holders), on its website and publicly available terms of service, that it would generally make funds from deposited checks available in the next business day. Bank of America also promised to make funds of at least $5,524.99 available the next business day.

44. The quick availability of deposited funds, especially from checks, was material in consumers' decision to bank with Bank of America over its competitors.

45. Bank of America knew that this was a material factor for consumers' decision to choose Bank of America and intended for consumers and account holders to rely on its representations.

46. Plaintiff Choi and the putative class believed and relied on Bank of America's claims when they chose to bank with Bank of America and continued to rely on them when they made their financial decisions after opening an account with the Bank.

47. Bank of America's claims about making funds deposited via check available the next business day turned out to be deceptive as BofA made a routine practice of delaying the availability of funds, even long after the funds had properly cleared the source bank. Thus, BofA

took the time value of money away from its customers and kept it for its own benefit, harming them in every conceivable way a consumer can be harmed while having delayed access to their money in these challenging economic times.

48. Plaintiff Choi and the putative class members would not have chosen to bank with Bank of America, or declined to continue to do so, if they had known BofA would routinely delay access to their deposited funds.

49. As a result of being deceived, Plaintiff Choi and the putative class members suffered damages by being delayed in having access to their money, which is especially acute in this high inflation and volatile market environment.

## COUNT III
## VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
## 815 ILCS 510, *et seq.*

50. Plaintiff realleges and repleads the allegations in Paragraphs 1 – 33 of this Complaint.

51. The Illinois Uniform Deceptive Trade Practices Act ("IUDTPA") identifies several trade practices as deceptive trade practices under 810 ILCS 510/2.

52. Under 810 ILCS 510/2(9), it is a deceptive trade practice to "advertise goods or services with intent not to sell them as advertised".

53. Bank of America engaged in this deceptive trade practice when it advertised that it would make funds deposited via check available within one business day when it fully intended for this not to be the case.

54. A Defendant commits a violation of the ICFA, 815 ILCS 505, *et seq.*, if it engages in a deceptive trade practice under the IUDTPA, as provided for by 815 ILCS 505/2.

14

55. Thus, Bank of America has further violated the Illinois Consumer Fraud Act by engaging in deceptive and misleading advertising.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff You Jin Choi, respectfully requests that this Court enter an order:

A. Certifying this Case as a class action on behalf of the Classes defined above, appointing Plaintiff You Jin Choi as Class Representative and the undersigned counsel as Class Counsel;

B. Awarding damages for the difference in the real value of money between the date of check deposit and date of fund availability;

C. Ordering Bank of America to disgorge to the Class the interest it earned on their money by making that money available to others and charging interest for it, such interest amounting, on information and belief, to potentially hundreds of millions of dollars;

D. Awarding any consequential damages suffered by Choi and the Class members as a result of Bank of America's misconduct,, including but not limited to finance changes and/or interest sustained by Class members as a consequence of Bank of America's delaying access to funds;

E. Awarding interest on the damages at a rate per annum as permitted by law;

F. Awarding costs and reasonable attorneys' fees incurred in prosecuting this action;

G. Ordering Bank of America to stop the wrongful practice recounted hereinabove; and

H. Awarding any further relief as this Court deems just and equitable.

Respectfully Submitted,

FUKSA KHORSHID, LLC


*/s/ William E. Meyer, Jr.*

William E. Meyer, Jr.

*Attorney for Plaintiffs and for the Class*

15

FUKSA KHORSHID, LLC
William E. Meyer, Jr. (ARDC No. 6207345) of counsel
Lema A. Khorshid (ARDC No. 6283237)
Lauren Miller (ARDC No. 6342296)
200 W. Superior, Suite 410
Chicago, IL 60654
T: 312.266.2221
F: 312.266.2224
william@fklawfirm.com
lema@fklawfirm.com
lauren@fklawfirm.com

**JURY DEMAND**:

Plaintiffs hereby demand trial by jury on all issues so triable.

Dated: February 2, 2023.

>Respectfully Submitted,
>FUKSA KHORSHID, LLC
>
>*/s/ William E. Meyer, Jr.*
>William E. Meyer, Jr.
>*Attorney for Plaintiffs and for the Class*


FUKSA KHORSHID, LLC
William E. Meyer, Jr. (ARDC No. 6207345) of counsel
Lema A. Khorshid (ARDC No. 6283237)
Lauren Miller (ARDC No. 6342296)
200 W. Superior, Suite 410
Chicago, IL 60654
T: 312.266.2221
F: 312.266.2224
william@fklawfirm.com
lema@fklawfirm.com
lauren@fklawfirm.com